Brenda **PAYTON** et al., Plaintiffs,

v.

**ABBOTT LABS** et al., Defendants.

Civ. A. No. 76–1514–S.

United States District Court,
D. Massachusetts.

July 30, 1979.

, David Rosenberg, David J. Fine, Rosenberg, Baker & Fine, Cambridge, Mass., and Silverglate, Shapiro & Gertner, Boston, Mass., for plaintiffs.

Marshall Simonds, James J. Dillon, Kenneth A. Cohen, Henry C. Dinger, Goodwin, Procter & Hoar, Boston, Mass., Russel H. Beatie, Jr., and Laurel Esterlein, Dewey, Ballatine, Bushby, Palmer & Wood, New York City, Gael Mahony and David W. Rosenberg, Hill & Barlow, Mary M. Sullivan, Parker, Coulter, Daley & White, Boston, Mass., and Hugh L. Moore, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER ON CLASS CERTIFICATION

SKINNER, District Judge.

The plaintiffs' motion for certification of a plaintiff class is conditionally ALLOWED to the extent and in the manner that I describe below. Their motion for certification of a defendant class is DENIED.

The plaintiff class includes all women:

1) who were exposed to diethylstilbestrol ("DES") *in utero;*

2) whose exposure occurred in Massachusetts;

3) who were born in Massachusetts;

4) who are domiciled in Massachusetts when they receive notice of this action; and

5) who have not developed uterine or vaginal cancer.[1]

The plaintiff class is conditionally certified under Rule 23(c)(4)(A), F.R.Civ.P., to permit resolution of these issues:

1) whether, in the circumstances alleged in this action, fear and anguish are, under Massachusetts law, compensable injuries;

2) whether, in the circumstances alleged in this action, having been put at an increased risk of developing cancer is, under Massachusetts law, a compensable injury;

3) whether, if without DES a class member would not have been born, she may, under Massachusetts law, maintain an action for injury from exposure to DES;

4) whether and when, in the circumstances alleged in this action, Massachusetts has recognized a cause of action for injury to a fetus;

5) whether and when the defendants were negligent in manufacturing and marketing DES for use by pregnant women to prevent miscarriages;

6) whether, under Massachusetts law, the defendants may be held strictly liable to the plaintiffs;

7) whether, under Massachusetts law, the defendants may be held absolutely liable to the plaintiffs for having allegedly tested DES on them without their consents;

8) whether a private right of action exists under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, 331, and 352;

9) whether and when, in producing, marketing, and promoting DES as a miscarriage preventative, the defendants engaged in a joint enterprise;

10) whether and when the defendants combined and conspired in their acts and omissions relating to DES;

1. The plaintiffs proposed a broader plaintiff class than the one that I have defined here. The defendants argued that members of the proposed class might be capable of invoking the law of jurisdictions other than Massachusetts, that Massachusetts law was less advantageous for the plaintiffs than that of other jurisdictions, and that accordingly the named plaintiffs could not properly bind class members to Massachusetts law. The defendants contended that the choice of law problem evidenced a lack of common questions, undercut the typicality of the named plaintiffs' claims, and cast doubt on the adequacy of the named plaintiffs' representation. Members of the plaintiff class that I have defined will be bound by Massachusetts law and unable to invoke any other.

As the defendants contended, other jurisdictions are more hospitable to plaintiffs than Massachusetts. The Massachusetts Supreme Judicial Court does not, for example, sanction strict liability in tort other than liability for breach of warranty under the Uniform Commercial Code, M.G.L. c. 106, §§ 2–314 to 2–318. *Swartz v. General Motors Corp.,* Mass., 378 N.E.2d 61 (1978).

In a diversity case, a federal court must apply the choice of law rule of the forum state. *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Turcotte v.*

*Ford Motor Company,* 494 F.2d 173, 176 (1st Cir. 1974). The traditional Massachusetts rule was that, in tort, the controlling law was that of the place where the wrong occurred. *Doody v. John Sexton & Company,* 411 F.2d 1119, 1121 (1st Cir. 1969); *In re Air Crash Disaster at Boston, Mass., July 31, 1973,* 399 F.Supp. 1106, 1115 (D.Mass.1975); *Brogie v. Vogel,* 348 Mass. 619, 621, 205 N.E.2d 234 (1965); *Trudel v. Gagne,* 328 Mass. 464, 465–66, 104 N.E.2d 489 (1952). The place of the wrong is that where the last event necessary for liability occurs. *Doody v. John Sexton & Company,* 411 F.2d 1119, 1121 (1st Cir. 1969). In recent cases, the Massachusetts Supreme Judicial Court has looked cautiously also to "the established relationship of the parties, their expectations, and the degree of interest of each jurisdiction whose law might be applied." *Saharceski v. Marcure,* 373 Mass. 304, 366 N.E.2d 1245, 1248 (1977). *See also Pevoski v. Pevoski,* 371 Mass. 358, 358 N.E.2d 416 (1976). Even this more recent approach will leave no law but that of Massachusetts available to plaintiff class members. The contention of the defendants that class members may be able to invoke the laws of jurisdictions from which the defendants come is unsupported by Massachusetts authority.

11) whether, if the defendants did not combine, conspire, or engage in a joint enterprise, a defendant may be held liable to a class member who cannot identify the maker of the DES to which she was exposed;

12) whether and for what periods claims of plaintiff class members under the foregoing theories of liability are barred by statutes of limitations; and

13) whether and for what periods statutes of limitations bar claims for:

a) breach of express warranties and representations;

b) breach of implied warranties of fitness, safety, and efficacy; and

c) fraudulent misrepresentation.

## I. *Certification of the plaintiff class*

### A. The prerequisites of Rule 23(a)

■ Before a class action may be maintained under Rule 23, it must meet the prerequisites of Rule 23(a) and one set of the alternative requirements in Rule 23(b). The plaintiffs bear the burden of demonstrating that a class action is appropriate. *Shaw v. Mobil Oil Corporation,* 60 F.R.D. 566, 568 (D.N.H.1973).

### 1. Numerosity

■ Rule 23(a)(1) requires that the members of a class in a class action be "so numerous that joinder of all members is impracticable." Surveys and estimates in the medical literature lead the plaintiffs to conclude that women in the United States who were exposed to DES *in utero* number between 500,000 and 2,000,000. Multiplying those figures by the percentage of the national population in Massachusetts, the plaintiffs estimate that the number of women in Massachusetts who were exposed to DES *in utero* is between 13,350 and 53,400. Memorandum Supporting Certification of the Plaintiff and Defendant Class Actions, Exhibit B at 2–8. Geographic differences in the use of DES suggest that this final range is conservative. *Id.* at 5 n.4.

The plaintiffs also contacted some 25 medical projects, clinics, and practitioners in the greater Boston area treating or monitoring women who were exposed *in utero* to DES.. Their search revealed a minimum of 2,339 readily identifiable women whose medical histories allegedly document exposure to DES (at least 1,441 of the total), or who believe on the basis of other evidence that they were exposed to DES (a maximum of 748, of whom some may have documentary evidence), or who show symptoms of DES exposure (at most 150, of whom some believe that they were exposed to DES).

The defendants do not contest the plaintiffs' showing of numerosity. I recognize that the plaintiffs' figures do not isolate plaintiff class members from the larger group of women in Massachusetts who were exposed to DES *in utero.* Even so, the magnitude of the plaintiffs' initial showing, 13,350 to 53,400 girls and women, makes it likely that the plaintiff class is so numerous that joinder of its members would be impracticable.

### 2. Commonality

■ Rule 23(a)(2) states that a class action may be maintained "[only if] . . . there are questions of law or fact common to the class." The issues which this class action is designed to resolve meet that requirement.

If the plaintiffs win favorable determinations on the class issues, they will not have proved the defendants' liability to class members, but they will have established legal and factual prerequisites to it. Answers to common questions need not guarantee a determination of liability. Rule 23(c)(4)(A) explicitly authorizes class actions "with respect to particular issues."

### 3. Typicality

■ Rule 23(a)(3) requires that, in a class action, the "claims or defenses of the representative parties" be "typical of the claims or defenses of the class." With regard to the issues for which this class action has been conditionally certified, the claims and defenses of the named plaintiffs are typical of those of the class.

The Second Amended Complaint filed on July 15, 1976 listed named plaintiffs ranging then in age from eight to 29. The range and distribution of their ages make clear that they will fairly represent the class with respect to varying statutes of limitations and changes in substantive law which occurred over the period in which DES was marketed. *Cf.* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1764 (1972 & 1979 Supp.) ("varying fact patterns" do not preclude typicality; "same legal or remedial theory" sufficient); 3B *Moore's Federal Practice* ¶ 23.06–2 (1978).

There may be periods of legal significance in which no named plaintiff was exposed to DES. If it appears that there are absent class members whose interests are not being protected, I may condition continued class certification upon the joinder of additional named plaintiffs to fill chronological gaps. Class certification should not of course depend primarily on the court's evaluation of the competence and dedication of counsel for the named plaintiffs. I am impressed, however, with counsel's concern for the class as a whole, indeed for a broader class than I have certified. I doubt that "typicality" requires total identification of interests.

■ A more serious problem stems from the fact that many of the named plaintiffs, and probably many of the class members, will be unable to identify the brand of DES to which they were exposed. When claims of named plaintiffs and those of absent class members are against different defendants, that fact has been held to prevent class certification. *La Mar v. H & B Novelty & Loan Company,* 489 F.2d 461, 465 (9th Cir. 1973). This careful opinion by Judge Sneed contains an important caveat against the distortion of the judicial function through imprudent extension of the class action. I have considered it both in the context of "typicality" and of "predominance," discussed *infra.*

This case falls within one of the exceptions recognized by the court in *La Mar,* in that plaintiffs allege a concerted pattern of marketing, deliberate concealment of man-

ufacturers' identities and a conspiracy to test the product on the public. 489 F.2d at 470. Prosecution of these theories would not prejudice those plaintiff class members who can identify the manufacturer, and have the easier case. While these theories will undoubtedly complicate the trial, they would, if successfully prosecuted, provide additional potential sources of recovery or settlement for all class members.

It is also true that these asserted causes of action are novel, and their status as part of the current jurisprudence of the Commonwealth of Massachusetts is by no means clear. If they do not survive the defendants' motions to dismiss, it may be necessary to limit the class, or to create subclasses by defendant. I emphasize that certification here is conditional, and may be adjusted or terminated according to the course of the case. In the present stance of the parties, I am satisfied the class meets the requirements of *La Mar,* and that the named plaintiffs are typical.

4. Adequacy

■ Rule 23(a)(4) states that a class action may be maintained "only if . . . the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation depends on the qualifications of counsel for the representatives, on an absence of antagonism and a sharing of interests between representatives and absentees, and on the unlikelihood that the suit is collusive. *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir. 1969). I find that the plaintiffs' counsel are capable of competent and vigorous prosecution of this action, that the action is not collusive, and that, on the issues for which I have certified this class action, the interests of the named plaintiffs and absentee class members are not antagonistic, but shared.

B. The alternative requirements of Rule 23(b)

The plaintiffs have moved for certification of a plaintiff class under Rule

23(b)(1)(A), (b)(1)(B), (b)(2), and (b)(3).[2] For the reasons that follow, I conclude that certification is appropriate only under Rule 23(b)(3).

### 1. Rule 23(b)(1)(A)

▮ Rule 23(b)(1)(A) is designed to prevent situations in which different courts establish "incompatible standards of conduct" for the same party. It is not meant to apply to personal injury suits for damages. *McDonnell Douglas Corp. v. U. S. Dist. Ct., C. D. of Cal.,* 523 F.2d 1083, 1086 (9th Cir. 1975), *cert. denied sub nom. Flanagan v. McDonnell Douglas Corp.,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). *See Advisory Committee's Note, Rule 23,* 39 F.R.D. 69, 100 (1966). *Contra, Hernandez v. Motor Vessel Skyward,* 61 F.R.D. 558 (S.D. Fla.1973), *aff'd mem.,* 507 F.2d 1278 (5th Cir. 1975); *Petition of Gabel,* 350 F.Supp. 624 (C.D.Cal.1972). I find that another court's granting declaratory or injunctive relief which would conflict with the remedies of the sort that the plaintiffs request[3] is unlikely. The plaintiffs have offered no substantial argument to the contrary.

**2.** Rule 23(b) states:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and

### 2. Rule 23(b)(1)(B)

▮ Though the plaintiffs seek a group insurance fund, to be paid for by the defendants, as one of their remedies, *see* note 3, *supra,* their proposal does not require (b)(1)(B) certification. Assuming for the sake of argument that insurance is a proper form of relief, the defendants could be directed to insure individuals as well as a class.

The Advisory Committee stated that (b)(1)(B) certification was proper "when claims are made by numerous persons against a fund insufficient to satisfy all claims." *Advisory Committee's Note, Rule 23,* 39 F.R.D. 69, 101 (1966). The plaintiffs do not, however, offer evidence of the likely insolvency of the defendants, and I do not believe that, without more, numerous plaintiffs and a large *ad damnum* clause should guarantee (b)(1)(B) certification.

### 3. Rule 23(b)(2)

▮ Subdivision (b)(2) "does not extend to cases in which the appropriate final relief

nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

**3.** The plaintiffs seek six remedies, of which the first four are phrased as prayers for declaratory or injunctive relief:

1) a declaratory judgment that the acts of the defendants in producing DES for use by pregnant women to prevent miscarriages were wrongful and unlawful;

2) an injunction ordering the defendants to notify girls, women, and doctors of facts about DES;

3) an injunction ordering the defendants to establish free clinics for examining plaintiff class members;

4) an injunction forbidding "mass-market testing" of drugs by the defendants;

5) monetary judgments for compensatory and punitive damages; and

6) an injunction ordering the defendants to establish an insurance fund, or to pay a sufficiently large sum, to compensate class members who might suffer later from any cancer that DES has induced.

relates exclusively or predominantly to money damages." It applies instead when injunctive relief, or declaratory relief on which injunctive relief could be based, is proper. *Advisory Committee's Note, Rule 23,* 39 F.R.D. 69, 102 (1966). *Accord, Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir. 1968). Finding that appropriate final relief in this action relates predominantly to money damages, I hold that the class may not be certified under subdivision (b)(2).

### 4. Rule 23(b)(3)

 For the reasons that follow, I find that the class issues, common questions of law and fact, predominate over questions affecting individual members of the plaintiff class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Accordingly, I conditionally certify the plaintiff class, with regard to the common issues, under Rule 23(b)(3).

Mass marketing of potent drugs is a modern phenomenon. Traditional models of litigation, pitting one plaintiff against one defendant, were not designed to, and cannot, deal with the potential for injury to numerous and geographically dispersed persons that mass marketing presents.

The courts are faced with the choice of adapting traditional methods to the recurrent phenomenon of widespread drug litigation or leaving large numbers of people without a practical means of redress. It has been the tradition of the common law to adapt. There is a limit to a court's capacity to deal with major social problems, but this case seems to me to be still within the historical judicial function of providing private redress for violation of a legal right. *Cf. La Mar v. H & B Novelty & Loan Company,* 489 F.2d 461 (9th Cir. 1973). For this litigation, in my opinion, certification under Rule 23(b)(3) offers the best means to adapt an established and tested structure to a modern phenomenon.

A fundamental aspect of justice is parity of treatment. Persons similarly situated and aggrieved should be similarly treated. The Advisory Committee wrote:

Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote *uniformity of decision as to persons similarly situated,* without sacrificing procedural fairness or bringing about other undesirable results.

*Advisory Committee's Note,* Rule 23, 39 F.R.D. 69, 102–03 (1966) (emphasis added). To determine whether and perhaps when the acts of the defendants were or became negligent in one proceeding is to insure that separate actions do not produce contradictory results.

The prerequisite to class certification under (b)(3) that the plaintiffs and the defendants contest most hotly is that of predominance. The defendants argue forcefully that innumerable questions would line the route from a finding that they had been negligent, or that they were strictly liable, to one that a given plaintiff was entitled to recover from them for adenosis or a risk of cancer. They say that the individual trial that would necessarily precede liability to a given plaintiff would have to encompass so many issues other than the ones that I listed above that a class action is not worth the effort. They suggest also that the individual trials would be so numerous and lengthy as to overwhelm the resources of this court. *Cf. Windham v. American Brands, Inc.,* 565 F.2d 59 (4th Cir. 1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). They note the commentary of the Advisory Committee on (b)(3):

A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

*Advisory Committee's Note, Rule 23,* 39 F.R.D. 69, 103 (1966). Several courts have held that in personal injury suits alleging

negligence or misfeasance by one or more defendants over extended periods, class certification should be denied. *Ryan v. Eli Lilly & Company,* No. 77–246 (D.S.C.1979); *Austin v. Johns-Manville Products Corp.,* No. 75 754 (D.N.J.1977); *Yandle v. PPG Industries, Inc.,* 65 F.R.D. 566 (E.D.Tex. 1974); *Tigue v. Squibb,* N.Y.L.J., May 2, 1979, at 7, col. 2 (N.Y.Sup.Ct. for N.Y.County); *Ferrigno v. Eli Lilly and Company,* No. L–41104–75 (Super.Ct. of N.J., L.Div., Hudson County, April 27, 1979); *Rosenfeld v. A. H. Robins Co., Inc.,* 63 A.D.2d 11, 407 N.Y. S.2d 196 (1978).

Commentators have done little to explicate or clarify the meaning of predominance. Professor Moore states that a "quantitative test, comparing the amount of time and attention required for settlement of the common questions with that needed to conclude the individual matters, has properly been rejected . . ." So too, he declares, has been an "outcome-determinative" test. More important in his view are issues of how efficient class treatment will be, how significant are the common questions, and whether class certification would result in a lawsuit that was "seriously distorted." He notes that 23(c)(4) may be used to sever common issues in such a way as to insure predominance. 3B *Moore's Federal Practice* ¶ 23.45[2] (1978).

Professors Wright and Miller also reject "clockwatching" in favor of a "pragmatic" standard. They write that

> when common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis.

They indicate that a complete identity of facts relating to class members is unnecessary; a "common nucleus of operative facts" will suffice. They note also that resolution of a predominating issue need not guarantee an end to the action, and cite tort liability as an issue which courts have viewed as being of "overriding significance." 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1778 (1972).

Analyzing whether mass torts were amenable to class action treatment, Judge Merhige detected a trend from wariness to acceptance. He concluded:

> On balance, it is the Court's view that under some circumstances mass accident litigation may and probably ought to be maintained as a class action. Perhaps the paradigm situation in which such treatment would be appropriate is one where: (1) the class action is limited to the issue of liability, (2) the class members support the action; and (3) the choice of law problems are minimized by the accident occurring and/or substantially all plaintiffs residing within the same jurisdiction.

*Causey v. Pan American World Airways, Inc.,* 66 F.R.D. 392, 397 (E.D.Va.1975). This action satisfies the criteria of his paradigm as to the limited class certified.

Courts have certified (b)(3) classes in mass tort cases. *E. g., Bentkowski v. Marfuerza Compania Maritima, S.A.,* 70 F.R.D. 401 (E.D.Pa.1976); *American Trading & Pro. Corp. v. Fischbach & Moore, Inc.,* 47 F.R.D. 155 (N.D.Ill.1969). The defendants distinguish these cases as having dealt with contemporaneous injuries at one location. *Cf. Austin v. Johns-Manville Products Corp., supra; Yandle v. PPG Industries, Inc., supra.* While I recognize that a course of injuries over time may require that I scrutinize the fairness and adequacy of class representation, I do not believe that it forecloses class treatment of the issues that I have certified. Properly framed special interrogatories, for example, would enable a jury trying class issues to establish periods of negligent conduct by one or more defendants.

Though Professors Moore, Wright, and Miller gainsay the use of a quantitative measure in determining predominance, this class action promises a likely efficiency. The plaintiffs have represented to me that "over 90% of the trial time" in two individual DES suits was devoted to the question of "whether and when defendants knew or

should have known of the dangers of DES exposure."

The defendants have argued that test cases offer an alternative to class certification; once one or two cases were tried, they say, the results would set the terms for settling the rest. I see no reason why the same logic should not vanquish the specter of an overwhelming onslaught of individual trials after adjudication of the class issues. In this latter case, both parties will have essential additional information with which to negotiate.

Victory for the defendants in this action will guarantee them freedom from harassing or repetitive litigation asserting theories and claims that have been disposed of. Victory for the plaintiffs will go far towards bringing them recovery. And in either case, assuming that the plaintiffs have shown that they have suffered compensable injuries, the court will benefit from a determination of whether and when the defendants were negligent. A test case adjudicating the right to recover of one plaintiff alleging injury at one time could not produce that last determination.

A second alternative to this class action might have been founded on collateral estoppel. In Massachusetts, however, the party to be collaterally estopped must have been a party to the earlier action in which the issue was litigated. *Rudow v. Fogel,* Mass., 382 N.E.2d 1046 (1978). An action between one plaintiff and the defendants would not preclude a second plaintiff from litigating the same issues.

■ Rule 23(b)(3)(A)–(D) lists matters pertinent to findings of predominance and superiority. Relying on the representations of the plaintiffs and bearing in mind the form of this class action, I find that the interest of class members in individually controlling the prosecution of separate actions is minimal. Rule 23(b)(3)(A). The plaintiffs have stated that ten individual DES suits have been brought by plaintiffs who might meet the class definition. Given the estimated size of the class, that number is insignificant. The apparent interest of counsel in some of the individual cases in supporting and perhaps joining this action diminishes its significance further. Accordingly, I find that the extent and nature of existing litigation poses no bar to this class action. Rule 23(b)(3)(B). The definition of the plaintiff class makes concentrating litigation of the claims in this forum highly desirable. Rule 23(b)(3)(C). In light of the foregoing discussion, I find that this class action will probably be manageable. Rule 23(b)(3)(D).[4]

### C. Notice

Rule 23(c)(2) states that, in a (b)(3) class action, "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See generally Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Rule 23(d)(2) states that, in conducting a class action, "the court may make appropriate orders . . . requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action . ."

■ To bind class members to a judgment, "the best notice practicable under the circumstances" must also meet the requirements of due process. Cutting off rights in a judicial proceeding may constitute a dep-

---

4. The defendants also object to this class action on the ground that the class is inadequately defined. They contend that the class membership of a given plaintiff will depend on evidence as to her mother's having taken DES and as to the plaintiff's having a condition related to DES. Proving exposure to DES is analogous to, though perhaps more difficult than, proving presence at a mass accident, for which class actions have been certified. Whether exposure to DES creates a condition without gross physical symptoms that is a cognizable injury is a disputed question for resolution after class certification. The definition of the plaintiff class is sufficient to allow a judgment as to the adequacy of its representation, and the provisions for notice that follow will insure that notice is adequate.

rivation of property. *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "[O]ne of the most fundamental requisites of due process" is "the right to be heard." *Schroeder v. City of New York,* 371 U.S. 208, 212, 83 S.Ct. 279, 282, 9 L.Ed.2d 255 (1962). To satisfy the demands of due process, a class action must fairly insure "protection of the interests of absent parties." *Hansberry v. Lee,* 311 U.S. 32, 42, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940). "[A]t a minimum" due process requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing *appropriate to the nature of the case.*" *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950) (emphasis added).

■■ Women who meet the criteria for membership in the plaintiff class may not know that they were exposed *in utero* to DES. Notice of this action, by publication, posting, or otherwise, will not inform them of their having been exposed, though other events may. Women who do not know now of their DES exposure will not have the opportunity to opt out of this action.

The stakes in this action are high. Women who do not opt out will be bound by the judgments that result. Class members who later develop cancer may be barred by the judgment in this action from seeking compensation for their subsequent injury.

Though courts have required that class members opt into class actions, the practice has been termed "a clear abuse of discretion." *Manual for Complex Litigation* § 1.45 (1977). *Accord,* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1787 (1972). Under Rule 23(c)(2)(B), absentees should not be required to take affirmative action to benefit from a class judgment. I find that requiring only proof of receipt of notice will not impinge on that aspect of the rule, and hold that due process in this case requires actual receipt of notice before a judgment may bind class members. Accordingly, for the protection of the members of the class, for the fair conduct of the action, and in view of the nature of the

case, I hold that individual notice must be sent to class members by first-class mail, return receipt requested, or by equivalent means that the plaintiffs propose and I approve. Only women whose return receipts are received or who, if first-class mail is not used, otherwise record actual receipt of notice, will, on their fitting the class definition, be members of the plaintiff class and bound by judgments in this action.

Notice to class members shall include the following information in as simple and direct a form as possible:

1. It shall state briefly the gist of the plaintiffs' suit, their causes of action, and their prayers for relief.

2. It shall set out the definition of the plaintiff class and the issues that have been certified for class treatment.

3. It shall notify the recipient that at her request the court will exclude her from the class so long as the request is received by a date that counsel and I will set. Rule 23(c)(2)(A).

4. It shall make clear that the judgment, whether favorable or not, will include all class members who do not request exclusion, Rule 23(c)(2)(B), and that an unfavorable finding or favorable award in this action may bar recovery for more serious subsequent injuries, including cancer, that might be attributable to DES.

5. It shall explain that any class member who does not request exclusion may enter an appearance through her counsel. Rule 23(c)(2)(C).

6. It shall caution that jurors may be more sympathetic to plaintiffs who prove liability and damages in the same proceeding than to plaintiffs who, as in this action, prove elements of liability before they reach proof of damages. *Cf.* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2390 (1971).

The plaintiffs shall submit a proposed notice by September 17, 1979. The defendants shall have 21 days to propose amendments and to comment.

**394**

II. *Bifurcation, Rule 42(b), and the Seventh Amendment*

My conditional certification of this class action assumes that the proceedings may be bifurcated. The class issues will be resolved by motions to dismiss, motions for summary judgment, and trial by jury. Determining the defendants' liability to class members will require a second round of trials by different juries.

 Under Rule 42(b), F.R.Civ.P., a court "may order a separate trial . . . of any separate issue . . . or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution." "[T]he decision to grant or deny separate trials under Fed.R.Civ.P. 42(b) is one committed to the sound discretion of the trial court . . . ." *Warner v. Rossignol,* 513 F.2d 678, 684 (1st Cir. 1975) (dictum). *Accord, In re Master Key Antitrust Litigation,* 528 F.2d 5, 14 (2nd Cir. 1975); *O'Donnell v. Watson Bros. Transportation Co.,* 183 F.Supp. 577, 586 (N.D.Ill.1960), and citations. A trial judge should try issues separately only when separation aids expedition and economy. *Warner v. Rossignol,* 513 F.2d 678, 684 (1st Cir. 1975); *Moss v. Associated Transport, Inc.,* 344 F.2d 23, 26 (6th Cir. 1965); *United States v. International Business Machines Corp.,* 60 F.R.D. 654, 657 (S.D.N.Y.1973). Insuring a fair trial must take precedence over economy and convenience. *Moss v. Associated Transport, Inc.,* 344 F.2d 23, 26 (6th Cir. 1965). Separation "must be grounded upon a clear understanding between the court and counsel of the issue or issues involved in each phase and what proof will be required to pass from one phase to the next." *State of Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309, 319 (5th Cir. 1978), *quoting Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307, 1324 (5th Cir. 1976) (footnote omitted).

Courts have tried a wide variety of issues separately. *E. g., Rossano v. Blue Plate Foods, Inc.,* 314 F.2d 174, 176–77 (5th Cir.), *cert. denied,* 375 U.S. 866, 84 S.Ct. 139, 11 L.Ed.2d 93 (1963); *Bernardo v. Bethlehem Steel Company,* 200 F.Supp. 534, 536 (S.D. N.Y.1961), *aff'd,* 314 F.2d 604 (2nd Cir. 1963); *Joplin v. United States,* 74 F.R.D. 4 (E.D.Okl.1976). *See also* C. Wright & A. Miller, 9 *Federal Practice and Procedure* § 2389 (1971) ("In appropriate cases a separate trial may also be ordered of affirmative defenses, such as estoppel, limitations or laches, release, res judicata, or the statute of frauds" [footnotes omitted]). *Cf. Pritchard v. Liggett & Myers Tobacco Co.,* 370 F.2d 95 (3rd Cir. 1966), *cert. denied,* 386 U.S. 1009, 87 S.Ct. 1350, 18 L.Ed.2d 436 (1967).

Constitutionally separable issues may, under the Seventh Amendment, be tried to different juries. *Franchi Construction Co. v. Combined Insurance Co. of America,* 580 F.2d 1, 7 (1st Cir. 1978) (dictum); *Arthur Young & Co. v. United States District Court,* 549 F.2d 686, 693 (9th Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977); *In re Gap Stores Securities Litigation,* 79 F.R.D. 283, 305 n.22 (N.D. Cal.1978) (dictum); *In re Master Key Antitrust Litigation,* 70 F.R.D. 23, 29 (D.Conn.), *appeal dismissed,* 528 F.2d 5 (2nd Cir. 1975); *O'Donnell v. Watson Bros. Transportation Co.,* 183 F.Supp. 577 (N.D.Ill.1960). Whether issues are constitutionally separable must be determined under the standard of *Gasoline Products Co. v. Champlin Co.,* 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). *Franchi Construction Co. v. Combined Insurance Co. of America,* 580 F.2d 1, 7 (1st Cir. 1978); *United Air Lines v. Wiener,* 286 F.2d 302, 304–06 (9th Cir.), *cert. denied,* 366 U.S. 924, 81 S.Ct. 1352, 6 L.Ed.2d 384 (1961).

*Gasoline Products* holds that, for separate trial of issues under the Seventh Amendment, the issues must be "so distinct and separable" that they may be tried separately "without injustice." When issues are "so interwoven" that their independent trial would cause "confusion and uncertainty, which would amount to a denial of a fair trial," they must be tried together. *Gasoline Products Co. v. Champlin Co.,* 283 U.S 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931).

The plaintiffs proposed for this class action a "blueprint trial." They suggested that a jury trying class issues could in effect compile a manual to guide later juries in determining the defendants' liability to individual class members. They argued that the guidance could extend even to all the variations that might affect causation and damages. The complexities of causation and the variations possible in physical injury convince me that the plaintiffs' proposal could not be implemented without "confusion and uncertainty, which would amount to a denial of a fair trial."

In their prayers for relief, the plaintiffs have asked for substantial punitive damages. Ordinarily, because their request demands a unified assessment of the defendants' culpability, it would preclude trying issues separately before different juries. *See United Air Lines v. Wiener,* 286 F.2d 302, 306 (9th Cir.), *cert. denied,* 366 U.S. 924, 81 S.Ct. 1352, 6 L.Ed.2d 384 (1961). Accordingly, it would make maintaining this suit as a class action impossible. In Massachusetts, however, punitive damages may not be recovered except as authorized by statute. *Caperci v. Huntoon,* 397 F.2d 799, 801 & n.2 (1st Cir.), *cert. denied,* 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968); *Lowell v. Massachusetts Bonding & Ins. Co.,* 313 Mass. 257, 269, 47 N.E.2d 265 (1943); *Boott Mills v. Boston & Maine Railroad,* 218 Mass. 582, 589, 106 N.E. 680 (1914); *Ellis v. Brockton Publishing Co.,* 198 Mass. 538, 543, 544, 84 N.E. 1018 (1908); Note, *Punitive Tort Damages in New England,* 41 B.U.L.Rev. 389, 390, 396 n.52 (1961).

III. *The jurisdictional amount*

The plaintiffs base their claim of federal jurisdiction on 28 U.S.C. §§ 1331 and 1332. Those sections require that "the matter in controversy" exceed "the sum or value of $10,000, exclusive of interest and costs . . . ." *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), and *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), make clear that, for this suit to be maintained as a class action, each member of the plaintiff class must meet the jurisdictional minimum. The defendants contend that members of the plaintiff class do not satisfy that minimum and that, in the context of this action, separating members of the class who meet the jurisdictional minimum from those who do not is impossible.

To dismiss a claim for want of the jurisdictional minimum, I must find "to a legal certainty" that the claim is less than the required jurisdictional amount. *St. Paul Indemnity Co. v. Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Plaintiffs' claimed damages are unliquidated and subject to a jury's evaluation of many subjective factors. I cannot now find to a legal certainty that the claim of any member of the plaintiff class is less than the jurisdictional amount. *Cf. Borras v. Sea-Land Service, Inc.,* 586 F.2d 881 (1st Cir. 1978).

IV. *Certification of a defendant class*

The plaintiffs move for certification of a defendant class which would include all companies that manufactured DES. I deny their motion for two reasons which preclude the need for further findings. First, I find that the defenses of the representative parties are unlikely to be typical of those of the class. Rule 23(a)(3). Each defendant may have individual defenses to theories of joint or alternative liability. Second, I find that the proposed representative parties would be unlikely to protect fairly and adequately the interests of the class. Rule 23(a)(4). As representatives and absentees sought to avoid their own individual liabilities, there would be little sharing of interests and much antagonism.