**Laurie S. MERTENS, et al., Plaintiffs,**

v.

**ABBOTT LABORATORIES, et al., Defendants.**

**Nos. D.N.H. C-80-223, D.R.I. 80-0478-B.**

United States District Court, D. New Hampshire.

July 27, 1983.

Brown & Nixon P.A., Stanley M. Brown, Kenneth C. Brown, Manchester, N.H., Tybursky & Watson, Stephen J. Tybursky, Thomas R. Watson, Portsmouth, N.H., for plaintiffs.

William S. Hall, Hall, Morse, Gallagher & Anderson, Concord, N.H., Edward L. Gnys, Jr., Gunning, Lafazia & Gnys, Inc., Providence, R.I., for defendant Abbott Labs.

Thomas Rath, Orr & Reno, Concord, N.H., for defendant Burroughs Wellcome.

Howard B. Myers, Myers & Laufer, Concord, N.H., for defendant Dexter (Direct Sales).

Richard S. Snierson, McLane, Graf, Raulerson & Middleton, P.A., Manchester, N.H., Goodwin, Procter & Hoar, Marshall Simonds, Don M. Kennedy, Boston, Mass., for defendant Eli Lilly.

Michael R. Callahan, Gallagher, Callahan & Gartrell, Concord, N.H., for defendant Emons (Grant).

W. Wright Danenbarger, Wiggin & Nourie, Manchester, N.H., Thomas D. Gidley, Hinckley & Allen, Providence, R.I., for defendant Merck.

James Q. Shirley, Sheehan, Phinney, Bass & Green, Manchester, N.H., Mary Morrisey Sullivan, Parker, Coulter, Daley & White, Boston, Mass., for defendant Miles Labs.

David J. Killkelley, Laconia, N.H., for defendant Parke Davis.

Raymond R. Ouellette, Ouellette, Hallisey, Dibble & Tanguay, P.A., Dover, N.H., for defendant Rexall.

Michael P. Lehman, Sulloway, Hollis & Soden, Concord, N.H., for defendant Rorer.

Matthias Reynolds, Devine, Millimet, Stahl & Branch, Manchester, N.H., for defendant Sandoz.

John E. Friberg, Wadleigh, Starr, Peters, Dunn & Chisea, Manchester, N.H., for defendant Squibb.

Lawrence Spellman, Ransmeier & Spellman, Concord, N.H., Bruce G. Tucker, Roberts, Carroll, Feldstein & Tucker, Inc., Providence, R.I., for Upjohn, Inc.

## MEMORANDUM

FRANCIS J. BOYLE, Chief Judge, Sitting by Designation.

This action was brought by twelve Plaintiffs. Eight of them are women who allege that by reason of exposure to diethylstilbestrol (hereinafter referred to as DES) *in utero,* they suffered various injuries, including cancerous or pre-cancerous conditions, repeated pregnancy losses, infertility, incomplete, defective or abnormal development of their reproductive tracts and other adverse effects. They seek damages and a variety of other forms of relief, including the establishment of a fund and treatment facilities for themselves and persons who in the future might suffer similar injury. The eight female Plaintiffs contend that they have sustained a variety of injuries by reason of their *in utero* exposure to DES. One of these eight Plaintiffs seeks damages for multiple surgeries to eradicate adenocarcinoma and sterility. The other seven seek damages for the following, respectively: genital tract abnormalities requiring frequent medical procedures; spontaneous abortions, tubal pregnancy and uterine and cervical adenosis; chronic cervicitis dysplasia with foci of carcinoma in situ requiring frequent medical procedures; irregular cervix necessitating surgery and the development of tissue abnormalities; adenosis in the genital tract and deformed cervix; irregular cervix; and hyperkeratosis and glycogenital squamous epithelium of the genital tract.

Defendants are eleven firms that allegedly manufactured DES. They assert that the companies which manufactured DES numbered in the hundreds. Some of the Plaintiffs can produce evidence to identify a specific Defendant as manufacturer of the product that allegedly harmed them. In other claims, the manufacturer is probably either one of two Defendants, and in still other actions the manufacturer of the DES is not and cannot be identified.

Plaintiffs seek a determination that this action be maintained as a class action, and describe the class as:

"a. all individuals exposed to DES *in utero;*

b. who are presently domiciled in or were citizens of New Hampshire on May 13, 1980, or were born or exposed to DES *in utero* in the State of New Hampshire;

c. who have discovered or shall discover through medical advice and/or diagnosis that exposure to DES *in utero* has caused or shall cause cancerous or pre-cancerous conditions in their bodies, repeated pregnancy loss, infertility, incomplete, defective and/or abnormal development of their reproductive tracts and/or other adverse effect."

An action may be brought as a class action and maintained as such if all four requirements of Rule 23(a) of the Federal Rules of Civil Procedure are met and one of the three requirements of Rule 23(b) is met. *Berman v. Narragansett Racing Association, Inc.,* 48 F.R.D. 333, 336 (D.R.I.1969).

There are substantial issues which have been argued at length by the parties with respect to whether the circumstances satisfy the four prerequisites to a class action stated in Rule 23(a). It is sufficient for present purposes to observe that the class alleged is so numerous that joinder of all members is impracticable, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and that the

representative parties will fairly and adequately protect the interests of the class.

The more important focus of the Court's consideration is whether or not the circumstances admit of a determination that Plaintiffs have satisfied one of the subdivisions of Rule 23(b).

Plaintiffs have argued that they qualify for class certification under the provisions of Rule 23(b)(1) and (2). This argument is predicated on the nature of the relief sought, which included a mandatory injunction establishing free medical treatment clinics to examine and treat females exposed to DES, a "publicity program" notifying the public of the need to determine whether or not an individual was exposed to DES, and the establishment of an insurance fund to provide compensation to DES victims who, subsequent to judgment, suffer injury due to DES exposure. The unique nature of the relief requires a "second look" at the impetus behind Rule 23(b)(1) and (2).

The Advisory Committee notes suggest that Rule 23(b)(1)(A) is intended to apply where one party has rights against or is under duties toward "numerous persons constituting a class, and is so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct." Fed.R.Civ.P. 23(b)(1)(A) advisory committee note. Actions such as a determination of the validity of a municipal bond issue or the determination of the rights of a number of riparian owners, in which one legal entity is the target of a class claim, are appropriate under this subdivision. It is necessary in actions of this nature to achieve a "unitary adjudication." *Id.* Clearly, Plaintiffs' present proposed class does not fall within this category, if only because of the fact that there are numerous plaintiffs in the proposed class, and numerous defendants are the targets of their claims.

The Advisory Notes describe situations in which Rule 23(b)(1)(B) applies as those wherein a judgment in a nonclass action by or against an individual member of a class might, as a practical matter, conclude the interest of other members of the class. *Id.* at (B). With respect to the present action, no one in the proposed class would be concluded by a judgment in a nonclass DES claim, except insofar as *stare decisis* might apply, due to the individual nature of each Plaintiff's proof as to damages and liability.

Rule 23(b)(2), according to the Advisory Notes, generally relates to situations in which a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. "Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." *Id.* The nature of the present action is such that neither injunctive nor declaratory relief alone will settle the legality or illegality of the Defendants' past behavior, either in whole or in part, again because of the uniquely individual nature of each Plaintiff's claim for damages.

The short and simple response to all of Plaintiffs' arguments based on these subdivisions is that due to the individual nature of each Plaintiff's claim, the class presently proposed does not fall within any of the categories provided by Rule 23(b)(1) or (2). Therefore, the crucial issue is whether Plaintiffs can satisfy the requirements of Rule 23(b)(3).

Rule 23(b)(3) requires a finding "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrat-

ing the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3).

This Court first notes that the parties have paid little attention to matters expressly made "pertinent to the findings" required in order to satisfy Rule 23(b)(3), with the exception of "manageability." Defendants do argue with some vigor that the action would be unmanageable as a class action. Plaintiffs argue to the contrary that the prohibitive cost of individual lawsuits would make the assertion of a claim an economic impossibility for most plaintiffs. Since all Plaintiffs in this action are represented by the same counsel, however, nothing is said of the interest of members of the class in individually controlling an action. Since all eleven Defendants are represented by their own counsel, it is obvious that each Defendant has its own defense under control. With regard to litigation already commenced by or against class members, there is a passing reference to other actions pending in the New Hampshire State Court, but pointedly, no point is made. All parties seem to be in agreement that this Court is the appropriate forum in which to concentrate the claims of class members. With these matters in mind, the Court now turns to a consideration of the two prerequisites to class certification under 23(b)(3), predominance and superiority.

While there are enough common issues of law and fact in this action to satisfy the 23(a)(2) analysis, 23(b)(3) requires that these common questions predominate over individual issues. In *Ryan v. Eli Lilly & Co.*, 84 F.R.D. 230 (D.S.C.1979), the court observed:

Apparently it is not sufficient that common questions merely exist, rather the common issues must outweigh the individual ones in terms of quantity or quality. In deciding the issue of predominance this Court must predict the evidence likely to be introduced at trial.

*Id.* at 233. In a sense, Plaintiffs would have the question of global liability be the predominant one in this litigation. They seek a blanket determination that DES causes injury to a female *in utero,* and believe that this common issue predominates over any questions affecting only individual class members. The telling inquiry is what would such a determination do to advance the cause of the class members as a group?

It is this Court's view that a mere finding that DES causes injury *in utero* would do substantially nothing to advance the common cause of class members. In light of the varied degrees of use, exposure and harm in each Plaintiff's case, a determination in principle would serve no useful purpose in resolving the individual claims made in this action. As in *Ryan,*

"The mothers of the proposed plaintiffs . . . each used a synthetic estrogen; however, the length of exposure, the reason for the drug's use, the specific chemical formulation of the drug, the state of the art at the time of consumption or the manufacturer's knowledge of synthetic estrogen's carcinogenic effect and possible medical result in the absence of the estrogens are all specific points going toward proximate causation which will require proof for each individual class member."

84 F.R.D. at 233. Although common questions need not be dispositive of the entire class action, *see* C. Wright & A. Miller, Federal Practice and Procedure § 1778 (1972), their resolution should at least provide a definite signal of the beginning of the end. This is not the type of litigation, however, that lends itself to establishing a global result that a product causes harm with the details merely to be tidied up thereafter. The importance of the "details" in each individual claim would clearly outweigh the single determination that DES causes injury.

If the damages question were the only one to be determined on an individual basis for each class member, bifurcating the trial as to liability and damages would be a practical consideration. It is clear, however, that a *per se* rule that DES causes injury could not possibly result in a *per se* rule of liability. The liability issue would

require separate and individual proof for each claimant and therefore could not be the predominant issue in the proposed class action. In *Yandle v. PPG Industries, Inc.,* 65 F.R.D. 566 (E.D.Tex.1974), former employees and survivors of former employees of the defendant's asbestos plant, sought class certification. *Id.* at 567. Like that case, the litigation presently before this Court,

> is very different from the single mass accident cases that have in the past allowed a class action to proceed on the liability issues. Those cases have normally involved a single. tragic happening which caused physical harm or property damage to a group of people, and affirmative defenses are absent. Usually, one set of operative facts will establish liability. . . . The Court is in agreement with the defendant that there is not a single act of negligence or proximate cause which would apply to each potential class member and each defendant in this case.

*Id.* at 571. *But see Payton v. Abbott Labs,* 83 F.R.D. 382, 391 (D.Mass.1979) ("Properly framed special interrogatories, . . . , would enable a jury trying class issues to establish periods of negligent conduct by one or more defendants."). Without the possibility of a *per se* rule on the issue of liability, there is no demonstrable purpose in seeking to resolve what would become an essentially irrelevant issue for the class as a whole.

The difficulties with a class determination of the liability issue weigh heavily in a consideration of the prerequisite of predominance from the Defendants' perspective as well. Although there may be some advantage to litigation which establishes what the industry manufacturing DES knew at specified intervals of time concerning the deleterious effects of the drug, there is nothing to show that knowledge at a given point in time essentially settles anything with respect to liability to a particular claimant. Moreover, the manufacturers are so disparately situated in terms of market participation that little, if anything, would be accomplished except as to those specifically identified. *But see Payton,* 83 F.R.D. at 391–92 (court stated it would benefit from a class determination of whether and when defendants should have known of the dangers of DES exposure; test case adjudicating claim of one plaintiff alleging injury at one time could not produce such a determination).

What has already been said about the individual nature of proof in the context of predominance applies with equal force to the issue of superiority. In addition, the Court notes that this is not a situation involving a large number of small claims which would otherwise not be brought since it is unlikely that any claim for DES inflicted injury would have an ad damnum of less than $10,000. Nor is this a situation where the "floodgate" argument is appropriate. If thousands of claims are brought, they will be dealt with in the same fashion as any other litigation. Indeed, judicial resources applied to each claim on an individual basis would doubtless be more effective than a general pronouncement applied to all cases without any real effect. These factors militate against a finding that the proposed class action in these circumstances is superior to other available methods of adjudication.

The advantage of certifying a class in this action is at best obscure, and the gain difficult to perceive. Other than the possibility of seeking to commit the law of New Hampshire in a particular direction, it is unlikely that anything of real value could be determined that would aid in the resolution of the claims of any individual Plaintiff. In addition, it is doubtful if any decision at this level could be as effective as an appellate determination of some of the sweeping and intriguing questions raised in this litigation. Though old fashioned, *stare decisis* is not yet out of fashion.

In *Payton,* District Judge Skinner conditionally certified a class consisting of Massachusetts residents who had been exposed to DES *in utero* and who had not developed cancer. 83 F.R.D. at 386. The purpose of the class certification was to permit a resolution of thirteen issues of state law relating to liability, damages and defenses. *Id.*

The issues ranged from whether fear of cancer by plaintiffs who had been exposed to DES, without more, is compensable, to whether defendants, or any of them, could be held liable to a plaintiff who was unable to identify the manufacturer of the particular DES to which she was exposed. The court was especially concerned with the possibility of "leaving large numbers of people without a practical means of redress." *Id.* at 390. Faced with the prospect of countless individual lawsuits, the court was inclined to find another way to solve the problem. *Id.*

It is worth reiterating that the class in *Payton* was conditionally certified for the express purpose of obtaining answers to numerous issues under Massachusetts law. This Court has sought to have the parties agree on sufficient facts in order that this action might be certified to the New Hampshire Supreme Court to obtain a response to many of the same issues raised in *Payton*. The parties have been adamant in their efforts to disagree. The only success thus far achieved after more than one year of effort, is an agreement that the parties cannot agree. Unfortunate as this circumstance is from the point of view of administration of justice, there is of course no means available to force the parties to agree to facts. This Court is not inclined to submit hypothetical questions barren of a factual record to the New Hampshire Supreme Court, and therefore cannot follow the *Payton* decision.

It should also be noted that the class certified in *Payton* was substantially narrower in scope than that proposed in this action. Only those plaintiffs who were exposed to DES but had not developed cancer were members of the *Payton* class. Their common injury—fear and anguish due to an alleged increased risk of developing cancer—would not cause the same need for highly individualized proof as the myriad of injuries alleged by the present Plaintiffs' proposed class, which would include all individuals "who have discovered or shall discover through medical advice and/or diagnosis that exposure to DES *in utero* has caused or shall cause cancerous or pre-can-cerous conditions in their bodies, repeated pregnancy loss, infertility, incomplete, defective and/or abnormal development of their reproductive tracts and/or other adverse effect."

Plaintiffs in this action argue strenuously that unless class certification is granted, many who have been injured by exposure to Defendants' product will not seek relief because of the cost of litigation. They fear that many presently unsuspecting claimants will not have the financial resources to assume the expense of individual trials and hence will not pursue a legitimate claim. This is an overly optimistic view of Plaintiffs' claim, however, proceeding upon the assumption that Plaintiffs would be victorious in a class action. Plaintiffs' memoranda are silent with respect to the possibility that they might not prevail in a class action, in which case those presently unsuspecting members of the proposed class might find themselves barred from any relief, irrespective of the nature or severity of their injuries.

In summary, a general determination of a right to recover could not aid any particular plaintiff, until liability and damages to that plaintiff are also determined. Significantly, this action makes claims for diagnosed injury. Indeed, disparate diagnosed injuries were suffered by each of the named female Plaintiffs in this action. What could be established by a plenary trial of the scientific data would not be helpful to an individual plaintiff until causation of a particular personal injury by a particular defendant was also established. It is difficult therefore to perceive how the expense of individual litigation could be avoided, class action or not. Furthermore, the argument based upon litigation expense pales in light of the ad damnum sought by Plaintiffs in this action.

For the foregoing reasons, Plaintiffs' Motions for Class Certification are denied.

SO ORDERED.