John Paul CAUSEY, Jr.,
Executor, etc.

v.

PAN AMERICAN WORLD AIRWAYS, INC., etc., et al.

Civ. A. No. 74–0428–R.

United States District Court,
E. D. Virginia,
Richmond Division.

March 28, 1975.

J. Vernon Patrick, Oren B. Lewis, Jr., Beskowitz, Lefkovits & Patrick, Birmingham, Alabama, Lewis, Wilson, Cowles, Cummings & Lewis, Arlington, Va., John Paul Causey, Jr., Sutton & Causey, West Point, Va., for plaintiff.

Harry E. McCoy, Joël A. Kolodny, Norfolk, Va., R. Harvey Chappell, Jr., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, John P. Causey, Jr., a citizen and resident of the Commonwealth of Virginia, brings this diversity action in his capacity as executor and personal representative of the estates of his deceased parents, John P. Causey, Sr., and Virginia D. Midgett Causey, both of whom were also citizens and residents of Virginia. Plaintiff names as defendants in this action Pan American World Airways, Inc. ("Pan Am"), a New York corporation; The Boeing Company ("Boeing"), a Delaware corporation; and Lee Black Zinke, executor of the estate of Donald B. Zinke, deceased, and Marianne D. Schroeder and Bank of America ("Schroeder"), co-administrators of the estate of John Edward Schroeder, Jr., deceased, citizens and domiciliaries of the State of California. The amount in controversy exceeds $10,000, exclusive of interest and costs. Jurisdiction of the Court is attained by virtue of 28 U.S.C. § 1332.

In his complaint, plaintiff alleges that his decedents were among some ninety-five persons who were killed while passengers aboard a Boeing 707 aircraft controlled, piloted and operated by Pan Am, its agents and officers, and designated Pan Am Flight 812, when the aircraft crashed into the side of a mountain on the island of Bali, Indonesia, on April 22, 1974. Plaintiff further alleges that the decedents of defendants Zinke and Schroeder were the captain and first officer, respectively, aboard the aircraft at the time of the crash and were at all times material to this action employees, agents, servants and officers of Pan Am, acting individually and on behalf of Pan Am within the scope of their duties.

Plaintiff's complaint states five causes of action. In Count One, plaintiff asserts a claim for the wrongful death and conscious pain and suffering of his decedents based on the alleged negligence and wilful misconduct of all defendants. Counts Two and Five of the complaint assert causes of action against defendant Pan Am for wrongful death based on the Montreal Agreement and for absolute liability, respectively. In Counts Three and Four, plaintiff asserts causes of action against defendant Boeing for breach of warranty and strict tort liability, respectively.

■ Defendants Pan Am and Boeing have responded to the complaint, denying any and all liability to the plaintiff. They have also asserted, *inter alia,* and accordingly have moved for dismissal of the complaint, that plaintiff has failed to state a claim upon which relief can be granted. In view of the fact that defendants have not cited any authorities in support of their motions to dismiss, said motions will be denied.

## MOTIONS TO QUASH SERVICE

Presently before the Court are motions to quash service of the complaint, which was made upon the Secretary of the Commonwealth of Virginia, filed on behalf of defendants Zinke and Schroeder. In support of said motions defendants assert that they and their decedents were residents and domiciliaries of the State of California. They further assert that at no material time did they or their decedents transact any business in Virginia which would subject them or their estates to substituted service of process on the Secretary of the Commonwealth pursuant to Sections 8–81.1 and 8–81.2 of the Code of Virginia (1950), commonly referred to as the "Long-Arm Statute." Defendants Zinke and Schroeder also contend that the airplane crash which is the subject of this action did not occur in Virginia, that the flight did not originate from the Commonwealth of Virginia, and that the cause of action alleged against them did not arise from or grow out of any business transacted in Virginia by the defendants' decedents.

Plaintiff, in opposition to defendants' motions to quash, relies specifically upon Section 8–81.2(a)(4) of the Code of Virginia, which provides:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

\*　　\*　　\*　　\*　　\*　　\*

(4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State.

Plaintiff argues, first, that the "acts or omissions outside" Virginia were those negligent acts of the deceased crew members which resulted in the deaths of plaintiff's decedents and that the "tortious injury in this State" was the economic injury suffered by the statutory beneficiaries, pursuant to the Virginia wrongful death act, by reason of the death of plaintiff's decedents.

Plaintiff further contends that defendants Zinke and Schroeder, as representatives of their decedents, meet the further requirement of Section 8–81.-2(a)(4), that personal jurisdiction be exercised over persons who "derive substantial revenue from goods used or consumed or services rendered, in this State," in that the deceased pilots were employees of Pan Am which, itself, did large amounts of business in Virginia at Dulles International Airport. Plaintiff asserts that as employees, drawing salaries and benefits from Pan Am, defendants drew benefits from the Commonwealth of Virginia through the protection the State's laws gave to Pan Am.

■■ The law is clear that the Federal Rules of Civil Procedure, by Rules 4(e) and (f), allow a party not an inhabitant of the state or found therein to be served with a summons in a federal court in the manner and under the circumstances prescribed by a state statute. United States v. First National City Bank, 379 U.S. 378, 381, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965). The application of the long-arm statutes, however, involves two steps: it is necessary to determine first whether the statute permits service of process on the non-resident defendant; and second, whether service under the statute violates the Due Process Clause of the federal Constitution. Haynes v. James H. Carr, Inc., 427 F.2d

700 (4th Cir.), cert. denied, 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970).

■ Applying this analysis to the facts before it, the Court notes first that the purpose of Virginia's long-arm statute has been interpreted as to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the Due Process Clause. Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 180 S.E.2d 664 (1971). The Court concludes, however, that substituted service upon defendants Zinke and Schroeder is not permitted under the Virginia statute in question in that the alleged nexus between Pan Am's operations in the state and the salaries and benefits paid to defendants' decedents by Pan Am is far too tenuous to suggest that the defendants or their decedents themselves derived "substantial revenue from . . . services rendered" in Virginia.

■ Moreover, were subsection (a) (4) of Section 8–81.2 to be read so as to allow the service herein accomplished and, hence, the maintenance of this suit against Zinke and Schroeder, it is the Court's view that "traditional notions of fair play and substantial justice" would be gravely offended. See International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Accordingly, the Court will grant defendants Zinke and Schroeder's motions to quash and will dismiss this action as to them.

### MOTION FOR CLASS ACTION DETERMINATION

Also before the Court is the plaintiff's motion, pursuant to Rule 23, Fed.R.Civ. P., which defendants oppose, for a determination that this suit may be maintained as a class action on behalf of the heirs, personal representatives and next-of-kin of all other passengers killed in the April 22, 1974 crash of Pan Am Flight 812. In support of his motion, plaintiff contends that he has met the four requirements of Rule 23(a) in that: (1) the class plaintiff seeks to represent is composed of not less than one hundred persons including the executors of the estates and/or the personal representatives of those passengers killed as a result of the crash; (2) questions of law or fact common to the entire class are whether Pan Am, and/or its agents and officers, and Boeing are liable to the class under the various tort theories alleged; (3) the claims of the plaintiff, who sues on behalf of his decedents, for compensatory and punitive damages are typical of the claims of the class identified; and (4) plaintiff adequately represents the class members in that he is a member of the class and has no interest antagonistic to those of other class members.

Plaintiff further contends that the requirements of Rule 23(b)·(1)(A) and (B) are also satisfied in this action. In this regard, he asserts that the prosecution of separate actions by individual members of the class against these defendants would create a risk of inconsistent or varying adjudications on the question of liability, in which event there would be established incompatible standards of conduct for the defendants.

Moreover, he contends, it is possible that adjudications with respect to individual suits by individual members of the class would, in case judgment went against that particular plaintiff, as a practical matter, be dispositive of the rights of other members of the class not party to the individual adjudication, so as to substantially impair or impede the ability of other members to protect their interests, by application of the doctrine of *res judicata*. Finally, plaintiff contends this action is also appropriate under Rule 23(b)(2) in that the defendants have acted on grounds generally applicable to the class, thereby making final declaratory relief with respect to the class as a whole appropriate.

Initially, the Court notes the existence of divergent opinions concerning the

propriety of applying the class action device to mass accident litigation. On the one hand, the Federal Rules Advisory Committee, in its notes on the 1966 amendments to Rule 23, stated, with particular reference to subdivision (b)(3) of the Rule, that:

> A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried. 39 F.R.D. 69, 103 (1966)

Other commentators as well have questioned the superiority of a class action when compared with other procedural devices for handling mass accident cases, see Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (J), 81 Harv.L.Rev. 356, 393 (1967), and have suggested that permitting a class action would create an unseemly rush to bring the first case and provide, through notice to all injured persons, a type of legalized ambulance chasing. See Weinstein, Revision of Procedure: Some Problems in Class Actions, 9 Buff.L.Rev. 433, 469 (1960).

More recently, however, several leading authorities in the field of federal practice have suggested that the argument for class action treatment is particularly strong in cases arising out of mass disasters, such as an airplane crash, in which there is little chance of individual defenses being presented, 7A Wright & Miller, Federal Practice and Procedure: Civil § 1783, at 117 (1972), and that with the introduction of large scale transportation facilities as the "jumbo jets," the ability to determine liability for an accident in one proceeding will be even more desirable. 3B Moore's Federal Practice, ¶ 23.45[3], at 23–811 n. 35 (2d ed. 1974).

On balance, it is the Court's view that under some circumstances mass accident litigation may and probably ought to be maintained as a class action. Perhaps the paradigm situation in which such treatment would be appropriate is one where: (1) the class action is limited to the issue of liability; (2) the class members support the action; and (3) the choice of law problems are minimized by the accident occurring and/or substantially all plaintiffs residing within the same jurisdiction. Even under such circumstances, however, the action, to be maintainable as a class action, must meet the requirement of Rule 23(b)(3), Fed.R.Civ.P., that the "class action [be] superior to other available methods for the fair and efficient adjudication of the controversy."

These various elements were apparently all present in Petition of Gabel, 350 F.Supp. 624 (C.D.Cal.1972), where, after a number of wrongful death actions arising out of an airplane accident and pending in different districts had been transferred to the Central District of California for consolidated pretrial, the Court held that the issue of liability could be converted into a class action for a declaratory judgment on behalf of a class of all persons who might have a cause of action arising out of the accident, with the issue of damages to be tried in the transferor districts after retransfer. While the Court, with due deference and for the reasons hereinafter noted, disagrees with the court's findings in *Gabel* that the requirements of Rules 23(b)(1)(A) and (B) and Rule 23(b)(2) were satisfied in that action, it concurs in the result reached in that the parties had in fact conducted the case as a class action on the issue of liability, and the aircraft disaster had occurred and all but thirteen of the sixty-six suits filed relating to the accident had been filed in the Central District of California.

■■ Contrary to the plaintiff's allegations in the instant matter, however, which, the Court would note, closely parallel the findings of the trial judge in Petition of Gabel, *supra*, 350 F.Supp. 624 (C.D.Cal.1972), the Court concludes that, in general, mass accident litigation is not appropriate for class action treatment pursuant to either Rules 23(b)(1) or (2) of the Federal Rules of Civil Procedure. With regard to Rule 23(b)(2), the law is clear that this subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages, which is unquestionably the precise relief sought in suits of this nature. La Mar v. H & B Novelty & Loan Co., 489 F.2d 461, 466 (9th Cir. 1973); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564 (2d Cir. 1968), later app., 479 F.2d 1005 (2d Cir. 1973), vacated on other grounds, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). See also Advisory Comm. Note, 39 F.R.D. 69, 102 (1966).

■ Moreover, with regard to Rule 23(b)(1) and its allowance of class actions where necessary to avoid creating a risk of incompatible standards of conduct for the party opposing the class, or of judgments for some class members that threaten the interests of others, it has been suggested, and properly the Court would note, that:

> Neither of these criteria is met by mass accident suits. While separate trials of mass accident claims may result in inconsistent judgments, the defendant is not subject to incompatible standards of conduct; he merely has to compensate some plaintiffs but not others. Moreover, mass accident plaintiffs cannot be adversely affected by the judgment in another plaintiff's separate suit against the common defendant because, not having had their day in court, they cannot be bound. Comment, Mass Accident Class Actions, 60 Cal.L.Rev. 1617, 1620 (1972).

For additional support of this view see 3B Moore's Federal Practice, ¶ 23.40, at 61, 63 (Cum.Supp.1973).

■ Therefore, even were the Court to assume, despite defendants' contentions to the contrary, some of which may be well-taken, that the prerequisites set forth in Rule 23(a)(1)–(4) have been met in this action, the Court must also consider the applicability of the specific standards, and the matters pertinent thereto, set forth in Rule 23(b)(3). The relevant evidence before the Court in this regard, submitted in the form of sworn affidavits by David L. Steege, Senior Attorney for Pan Am, and Joel A. Kolodny, counsel for defendant Pan Am in this litigation, is as follows:

1. The accident involving Pan Am Flight 812 occurred at Bali, Indonesia on April 22, 1974. The investigation of the accident, pursuant to the Chicago Convention and because of the geographic location of same, is being conducted under the exclusive jurisdiction and control of the government of Indonesia.

2. Of the ninety-six passengers aboard the ill-fated flight, only seventeen were citizens of the United States while another three passengers, not listed as American citizens, resided in the United States at some time; the seventy-nine remaining passengers of foreign nationalities killed in the disaster represented a total of either eight or nine foreign nations, with the majority of them, or sixty-three passengers, being either Japanese, French or Australian.

3. Of the seventeen American citizens killed, only two, plaintiff's decedents in this action, were residents of Virginia. On the remaining fifteen Americans, six were citizens of New York, three were citizens of California, two each were citizens of Delaware and Texas, and one each was a citizen of Michigan and Washington.

On the basis of these facts, the Court concludes that the matter *sub judice* is

not appropriate for treatment as a class action pursuant to Rule 23(b)(3). The Court is led to this conclusion as a result of several aspects of the instant action. First, were the Court to determine that this matter may be maintained as a class action on behalf of all ninety-six passengers aboard Flight 812, the conflict of law questions would be extremely complex. Moreover, were the Court to limit the class to the representatives of only the seventeen American citizens aboard the aircraft at the time of the crash, putting aside for present purposes the issue of numerosity, the conflicts questions as to the plaintiff's burden of proof, the use of certain defenses, and the availability of some theories of recovery and doctrines which aid the plaintiff, would still remain. See Comment, Mass Accident Class Actions, *supra*, 60 Cal.L.Rev. at 1623. While such questions, despite their complexity, are not insurmountable obstacles to the maintenance of a class action, in view of plaintiff's failure either to discuss or to suggest the manner in which these questions may be resolved, their existence weigh heavily against his position.

■ A second factor leading the Court to rule against class action treatment is that there is no doubt a strong interest of members of the class to individually control the prosecution of their separate actions. See Rule 23(b)(3)(A), Fed.R.Civ.P. In addition to the high financial value placed upon such wrongful death actions—which is evidenced by plaintiff's demand for judgment totalling $3,375,000—as Judge Fullam, in denying a motion for a class action determination under somewhat similar circumstances in Hobbs v. Northeast Airlines, Inc., 50 F.R.D. 76 (E.D.Pa.1970), has noted:

> Not only do the claims vitally affect a significant aspect of the lives of the claimants (unlike the usual class action, where individual claims are usually somewhat peripheral to the lives of the claimants), but there is a wide range of choice of the strategy and tactics of the litigation. Some claimants may well evaluate their chances against certain potential defendants as better than against others. Some claimants may prefer the wholesale approach. 50 F.R.D. at 79.

Of course, should any potential claimant lack interest in controlling the litigation of his claim, he may utilize the procedure provided in Rule 20, Fed.R. Civ.P., to join the instant action. In view of the realities of the situation, however, it might well prove to be an exercise in futility were the Court to declare a class action and later learn that most or all of the class members had chosen to opt out of this action.

■ Finally, and perhaps most importantly, it is clear to the Court that it would be particularly undesirable to concentrate the adjudication of this controversy in this forum. As previously noted, other than the named plaintiff and his decedents, none of the potential class members has any apparent connection with the Commonwealth of Virginia. Moreover, it does not appear that any witnesses, evidence or documentation is located within this District or that, in view of the diverse citizenship of the American passengers aboard Flight 812, the convenience of the other potential class members would be beneficially served. Therefore, despite the fact that it may prove to be appropriate to concentrate the litigation of this action in a single forum, the Court concludes that the procedures provided in the Multi-district Litigation Statute, 28 U.S.C. § 1407, would better serve the interests of the parties involved than a determination to permit the prosecution of this matter as a class action. See, *e. g.*, In re Air Crash Disaster at Hong Kong on June 30, 1967, 298 F.Supp. 390 (Jud. Pan.Mult.Lit.1969). Accordingly, the Court will deny plaintiff's motion.

An appropriate order will issue.