In re NORTHERN DISTRICT OF CALIFORNIA, DALKON SHIELD IUD PRODUCTS LIABILITY LITIGATION.

Janice ABED, et al.,
Plaintiffs-Appellants,
v.

A. H. ROBINS COMPANY, et al. a Virginia corporation, Hugh J. Davis, M.D., and Irwin S. Lerner, Defendants-Appellees.

Nos. 81–4648 to 81–4656.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 1982.

Decided June 18, 1982.

As Amended July 15, 1982.

Rehearing and Rehearing En Banc Denied Aug. 26, 1982.

Certiorari Denied Jan. 24, 1983.
See 103 S.Ct. 817.

Thomas J. Brandi, Abramson & Bianco, San Francisco, Cal., Cory Streisinger, Arthur C. Johnson, Johnson, Harrang & Swanson, Eugene, Or., Bradley Post, Post, Syrios & Bradshaw, Wichita, Kan., J. Michael Egan, Minneapolis, Minn., Kevin J. Dunne, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for Abed, et al. (Dalkon Shield).

Charles Alan Wright, Austin, Tex., argued, for A. H. Robins Co., et al.; Douglas E. Bragg, Bragg & Dubofsky, Denver, Colo., on brief.

Before GOODWIN, ANDERSON and SCHROEDER, Circuit Judges.

GOODWIN, Circuit Judge.

Plaintiffs appeal from a district court order conditionally certifying their claims as: (1) a nationwide class action on the issue of punitive damages pursuant to Federal Rule of Civil Procedure 23(b)(1)(B); and (2) a statewide (California) class action on the issue of liability pursuant to Rule 23(b)(3). *In re Northern District of California "Dalkon Shield" IUD Products Liability Litigation*, 521 F.Supp. 1188 (N.D.Calif. 1981); 526 F.Supp. 887 (N.D.Calif.1981).

All plaintiffs claim to have been injured by the Dalkon Shield intrauterine device. All of those plaintiffs who have joined in this appeal challenge class certification. Defendant A. H. Robins also opposes certification of the California 23(b)(3) class. Defendant Hugh J. Davis opposes certification of both classes.

Between June 1970 and June 1974, approximately 2.2 million Dalkon Shields were inserted in women in the United States. Many users sustained injuries. Complaints include uterine perforations, infections, ectopic and uterine pregnancies, spontaneous

abortions, fetal injuries and birth defects, sterility, and hysterectomies. Several deaths also were reported. On June 28, 1974, Robins withdrew the Dalkon Shield from the market.

By May 31, 1981, approximately 3,258 actions relating to the Dalkon Shield had been filed, and 1,573 claims were pending. The claims are based on various theories: negligence and negligent design, strict products liability, breach of express and implied warranty, wanton and reckless conduct, conspiracy, and fraud. Most plaintiffs seek both compensatory and punitive damages.

Some plaintiffs joined Robins, Davis, and Irwin W. Lerner as defendants, as well as their own doctors or medical practitioners who recommended and inserted the Dalkon Shield, and local suppliers. Many plaintiffs sued fewer defendants.

In 1975 all actions then pending in federal district courts alleging damages from the use of the Dalkon Shield were transferred by the Judicial Panel on Multidistrict Litigation to the District of Kansas for consolidated pretrial proceedings. *In re A.H. Robins Co. Inc., "Dalkon Shield" Liability Litigation*, 406 F.Supp. 540 (Jud.Pan.Mult.Lit. 1975), 419 F.Supp. 710 (Jud.Pan.Mult.Lit. 1976), 438 F.Supp. 942 (Jud.Pan.Mult.Lit. 1977). After four years of consolidated discovery, the Judicial Panel began vacating its conditional transfer orders and remanding the cases to their respective transferor courts. *In re A.H. Robins Co. Inc., "Dalkon Shield" IUD Products Liability Litigation*, 453 F.Supp. 108 (Jud.Pan.Mult.Lit.1978), 505 F.Supp. 221 (Jud.Pan.Mult.Lit.1981).

State courts have also received a number of Dalkon Shield cases. The results have been mixed. Some plaintiffs have recovered substantial verdicts. Others have recovered nothing. Many cases have been settled.

Approximately 166 Dalkon Shield cases were pending in the Northern District of California. After one jury trial that lasted nine weeks, Judge Williams consolidated all Dalkon Shield cases pending in that district and ordered briefing on the feasibility of a class action. All but one of California plaintiffs' counsel opposed class certification. Out-of-state plaintiffs were not notified of the briefing request and did not participate in the status conferences held to discuss the class action proposal. All defendants at that time opposed class certification.

On June 25, 1981, Judge Williams entered an order conditionally certifying a nationwide class, under Fed.R.Civ.P. 23(b)(1)(B),[1] consisting of all persons who filed actions for punitive damages against Robins.[2] The court asserted jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332. One stated purpose of certification was to insure the rights of all plaintiffs to a proportionate share of any punitive damages recovery from the "limited fund" of Robins' assets. Judge Williams stated:

> "At the present time, some 1,573 suits involving claims for compensatory damages well over $500 million and claimed punitive damages in excess of $2.3 billion, are pending against A. H. Robins. The

---

1. Fed.R.Civ.P. 23(b)(1)(B) provides:
   "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   "(1) the prosecution of separate actions by or against individual members of the class would create a risk of
   . . . .
   "(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; . . ."

   The prerequisites of subdivision (a) are:
   "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

2. On the following day, June 26, Robins moved for certification of a plaintiff punitive damages class under Rule 23(b)(1)(B).

potential for the constructive bankruptcy of A. H. Robins, a company whose net worth is $280,394,000.00, raises the unconscionable possibility that large numbers of plaintiffs who are not first in line at the courthouse door will be deprived of a practical means of redress."

No testimony was taken and the way in which the "fund" was limited was not specified.

Judge Williams also conditionally certified a California statewide subclass under Rule 23(b)(3) consisting of plaintiffs who have filed actions against Robins in California.[3] This California class is limited to the question of Robins' liability arising from the manufacture and sale of the Dalkon Shield. Any plaintiff may opt out of this class, whereas all plaintiffs in the nation would be bound by the determination on punitive damages.

Plaintiffs from California, Oregon, Ohio, Florida, and Kansas moved to decertify the punitive damages class. The district court denied the motion and certified the issues for an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). This court granted the interlocutory appeals and ordered them expedited.

## I

### The Rule 23(b)(1)(B) Nationwide Punitive Damages Class

#### A. *Rule 23(a) Prerequisites*

##### 1. *Commonality.*

■ The district court held that the punitive damages class presented common questions about Robins' knowledge of the safety of its product at material times while the Shield was on the market. What Davis, Lerner and Robins knew about the Dalkon Shield, when they knew it, what information they withheld from the public, and what they stated in their advertising to doctors and in their product instructions during various time periods may all be common questions. These questions are not entirely common, however, to all plaintiffs.

Moreover, as the plaintiffs correctly argue, the 50 jurisdictions in which these cases arise do not apply the same punitive damages standards. Punitive damages standards can range from gross negligence to reckless disregard to various levels of wilfullness and wantonness. If commonality were the only problem in this case, it might be possible to sustain some kind of a punitive damage class. But difficulties remain with other certification requirements.

##### 2. *Typicality.*

Typicality, while it may not be insurmountable, remains a significant problem. The district court order recites that representative parties have been selected. *In Re Northern District of California "Dalkon Shield" IUD Products Liability Litigation,* 526 F.Supp. at 919. However, all of the appealing plaintiffs assert that no plaintiff has accepted the role, and that no single plaintiff or group of plaintiffs could be typical of the numerous persons who might have claims. No plaintiff has appeared in this appeal in support of class certification. Again, while typicality alone might not be an insurmountable problem, it helps make the overall situation difficult to rationalize as proper for class treatment.

3. Fed.R.Civ.P. 23(b)(3) provides:

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters perti-

nent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

### 3. Adequacy of representation.

The court designated lead counsel for the nationwide class, but he has resigned. New counsel has been designated but has not yet started to represent the class. Apparently none of the attorneys already involved in the case is willing to serve as class counsel. The district judge may well be better able to choose a good lawyer than some of the plaintiffs may be, but the right of litigants to choose their own counsel is a right not lightly to be brushed aside.

The plaintiffs argue that newly appointed, even if expert counsel, may not litigate the action as vigorously as counsel selected by plaintiffs. This court is hesitant to force unwanted counsel upon plaintiffs on the assumption that appointed counsel will be adequate. Even if the class were otherwise acceptable, it would have to be decertified if adequate lead counsel turned out to be unavailable.

We are not necessarily ruling out the class action tool as a means for expediting multi-party product liability actions in appropriate cases, but the combined difficulties overlapping from each of the elements of Rule 23(a) preclude certification in this case.

### B. The Rule 23(b)(1)(B) Requirements

#### 1. Applicability of McDonnell Douglas.

The Ninth Circuit has expressly barred class certification under 23(b)(1)(B) for independent tort claims seeking compensatory damages, unless separate actions "inescapably will alter the substance of the rights of others having similar claims." *McDonnell Douglas Corp. v. U. S. Dist. Ct., C.D. of Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976), *quoting LaMar v. H & B Novelty & Loan Company*, 489 F.2d 461, 467 (9th Cir. 1973). In *McDonnell Douglas*, this court found that "[a]t worst, individual actions (for air crash damages) would leave unnamed members of the class with the same complexity and expense as if no prior actions had been brought." 523 F.2d at 1086.

Robins argues that *McDonnell Douglas* does not preclude the 23(b)(1)(B) certification of a nationwide punitive damage class because that case treated only individual compensatory damage claims, and punitive damages were not at issue. The district judge did not discuss *McDonnell Douglas* but stated that certification under 23(b)(1)(B) is appropriate if individual actions "may" affect the claims of parties not before the court. Because total claims, if successful, might exceed Robins' current assets, the judge noted that the earliest individual actions tried could exhaust Robins' assets and thus adversely affect the claims of plaintiffs who sued later and who might not be able to collect on their judgments. The judge cited *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 n.9 (9th Cir. 1976), in which the court stated that Rule 23(b)(1)(B) applied "where the claims of all plaintiffs exceeded the assets of the defendant and hence to allow any group of individuals to be fully compensated would impair the rights of those not in court." *Green*, however, was a 10b–5 action and did not involve mass personal injury claims. The quoted dictum did not discuss whether Rule 23(b)(1)(B) would apply in a tort case. One reason for certification obviously was to avoid any detrimental effect of earlier individual claims upon later claims.

*McDonnell Douglas*, however, appears to prohibit Rule 23(b)(1)(B) certification of mass tort actions for compensatory or punitive damages unless the record establishes that separate punitive awards inescapably will affect later awards. The detrimental effect of earlier claims upon later claims commends itself to this court as worthy of future judicial and legislative consideration. As plaintiffs in this case correctly argue, though, not every plaintiff will prevail and not every plaintiff will receive a jury award in the amount requested. Thus on the present state of the record, the detrimental effect of separate punitive damages awards is not clearly inescapable.

#### 2. The limited fund concept.

The drafters of Rule 23 intended 23(b)(1)(B) to apply to "limited fund" cases

where numerous plaintiffs claim "against a fund insufficient to satisfy all claims." Advisory Committee Note to the 1966 Revision of Rule 23, 39 F.R.D. 69, 101 (1966).

The district court certified the "limited fund" punitive damage class before requesting or receiving adequate evidence of Robins' net worth, earnings or available insurance coverage. The judge received Robins' attorney's affidavit showing the total claims against Robins and Robins' fund of assets but did not reopen discovery to permit plaintiffs to challenge these affidavits. The record does not show how many cases have been settled.

Similarly, the court in *In re Agent Orange Product Liability Litigation*, 506 F.Supp. 762, 789–90 (E.D.N.Y.1980), refused to certify "Agent Orange" claims under Rule 23(b)(1)(B) because the plaintiffs offered no evidence of the likely insolvency of defendants. *See also Payton v. Abbott Labs*, 83 F.R.D. 382, 389 (D.Mass.1979) (class certification granted under Rule 23(b)(3) but denied under 23(b)(1)(B) because the plaintiffs offered no evidence of the likely insolvency of the defendants and, "without more, numerous plaintiffs and a large *ad damnum* clause should [not] guarantee (b)(1)(B) certification.").

Rule 23(b)(1)(B) certification is proper only when separate punitive damage claims necessarily will affect later claims. The district court erred by ordering certification without sufficient evidence of, or even a preliminary fact-finding inquiry concerning Robins' actual assets, insurance, settlement experience and continuing exposure.

The court's other consideration for certifying the punitive damage issue as a nationwide class action was to ensure that Robins would be punished only once. The court correctly notes, and appellants agree, that no rule of law limits the amount of punitive damages a jury may award. A class action, however, is not the only way to protect a defendant from unreasonable punitive damages. Given the difficulties in complying with the requirements of Rule 23(b)(1)(B) in this case, it was error to certify a nationwide class of punitive damages claimants.

II

The Rule 23(b)(3) California Liability Class

A. *Suitability of Class Action Litigation of Mass Products Liability Cases*

The Advisory Committee Note to the 1966 Revision of Rule 23(b)(3) (39 F.R.D. 69, 103) states:

"A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried...."

Relying in part on that note and on the inherent obstacles to personal injury class actions, many courts have denied plaintiffs' motions for class certification in mass tort or personal injury actions, especially those alleging negligence by one or more defendants over extended periods. *See Ryan v. Eli Lilly and Co.*, 84 F.R.D. 230 (D.S.C.1979) ("DES" action); *Mink v. University of Chicago*, 460 F.Supp. 713 (N.D.Ill.1978) ("DES" action); *Harrigan v. United States*, 63 F.R.D. 402 (E.D.Penn.1974) (action for negligent surgery in veterans' hospital); *Snyder v. Hooker Chemicals & Plastics Corp.*, 104 Misc.2d 735, 429 N.Y.S.2d 153 (1980) (Love Canal toxic waste action); *Rosenfeld v. A.H. Robins Co.*, 63 A.D.2d 11, 407 N.Y. S.2d 196 (1978) (Dalkon Shield case) (discussed below); *Hobbs v. Northeast Airlines, Inc.*, 50 F.R.D. 76 (E.D.Penn.1970) (Rule 23(b)(3) certification of airplane crash cases denied because individual plaintiffs in tort actions have an interest in controlling their own lawsuits; many other suits already were pending in other states; and Pennsylvania causes of action, under which prospective named plaintiffs were suing, might not be available to out-of-state claimants); *Daye v. Commonwealth of Pennsylvania*, 344 F.Supp. 1337, 1342–43 (E.D.Penn.1972),

*cert. denied,* 416 U.S. 946, 94 S.Ct. 1956, 40 L.Ed.2d 298 (1974) (Rule 23(b)(3) certification of school bus accident cases denied because some plaintiffs would bring personal injury claims while other plaintiffs would bring wrongful death claims); *Marchesi v. Eastern Airlines, Inc.,* 68 F.R.D. 500, 501 (E.D.N.Y.1975) (class certification under any Rule 23 subsection denied).

In *Causey v. Pan American World Airways, Inc.,* 66 F.R.D. 392 (E.D.Va.1975), the court denied the plaintiffs' motion for class certification of airplane crash cases under Rule 23(b)(1)(A) and (B) and under Rule 23(b)(2) or (3) because most prospective plaintiffs were not United States citizens. The court noted, however, that mass accident litigation "may and probably ought to be maintained as a class action" where: (1) the class action is limited to the issue of liability; (2) class members support the action; (3) choice of law problems are minimized because the accident occurred or substantially all plaintiffs reside in the same jurisdiction; and (4) the 23(b)(3) requirement of "superiority" also is met. *Id.* at 397. *But see Petition of Gabel,* 350 F.Supp. 624 (C.D.Cal.1972) (fifty deaths in airplane crash) (overruled by *McDonnell Douglas); Hernandez v. Motor Vessel Skyward,* 61 F.R.D. 558 (S.D.Fla.1973), *affirmed,* 507 F.2d 1279 (5th Cir. 1975) (disapproved in *McDonnell Douglas* ) (Rule 23(b)(1)(A) certification on issue of defendants' negligence in preparing or making available contaminated food in suits for food poisoning on cruise ship); *Bentkowski v. Marfuerza Compania Maritima, S.A.,* 70 F.R.D. 401 (E.D.Penn.1976) (Rule 23(b)(3) class certification in cruise ship food poisoning cases on negligence issue); *Ouellette v. International Paper Co.,* 86 F.R.D. 476 (D.Vt.1980) (class certification in lake pollution cases); *American Trading and Pro. Corp. v. Fischbach & Moore, Inc.,* 47 F.R.D. 155 (N.D.Ill. 1969) (fire at Chicago trade center).

In the typical mass tort situation, such as an airplane crash or a cruise ship food poisoning, proximate cause can be determined on a class-wide basis because the cause of the common disaster is the same for each of the plaintiffs.

In products liability actions, however, individual issues may outnumber common issues. No single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasor's affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case. *See Rosenfeld v. A.H. Robins Co.,* 104 Misc.2d 735, 407 N.Y.S.2d 196, (1978) (class certification denied under New York statute patterned after Rule 23(b)(3)).

A federal district court also denied Rule 23(b)(3) class certification of asbestosis cases for these reasons. *Yandle v. PPG Industries Inc.,* 65 F.R.D. 566, 569 (E.D.Tex. 1974). The *Yandle* court also suggested that when personal injuries are involved, each plaintiff should have the right to prosecute his own claim and to be represented by the lawyer of his choice.

Federal district courts recently have conditionally certified two "mass tort" class actions that involve products liability and numerous injuries caused by individual products over a long period of time. *In re Agent Orange Product Liability Litigation, supra,* 506 F.Supp. 762, and *Payton v. Abbott Labs, supra,* 83 F.R.D. 382 ("DES" case). In both cases, the plaintiffs sought class status. Both cases were certified under Rule 23(b)(3).

The *Agent Orange* court found that Rule 23(b)(3) requirements were met because: (1) the litigation was at such an early stage that resolution of preliminary issues concerning the relationship between the government and the Agent Orange manufacturer would affect every plaintiff's claim; (2) discovery and proof in such "untested areas of law" would be so expensive and complicated that no single attorney would be likely to succeed; (3) all cases currently pending already were before that same court under multidistrict litigation

procedures; and (4) facts and issues in all pending and future cases were identical or parallel. 506 F.Supp. at 790–91.

The *Payton* court, without distinguishing the cases prohibiting class action litigation. of mass torts, certified a plaintiff class of all women who were exposed to DES *in utero* in Massachusetts. The court found that "over 90% of the trial time" in two individual DES suits had been devoted to "whether and when defendants knew or should have known of the dangers of DES exposure." 83 F.R.D. at 391–92. The class action was limited to resolving those issues and issues of what injuries Massachusetts law would recognize. *Id.* at 386–87. The *Payton* court partially relied upon the nonavailability in Massachusetts of offensive collateral estoppel, which in some states would prevent relitigation of decided issues. *Id.* at 392. Both the *Payton* and *Agent Orange* courts have recognized that neither causation nor damages may be determined in class proceedings. 83 F.R.D. at 394, 506 F.Supp. at 790.

## B. *Rule 23(a) Prerequisites*

Before a class action may be maintained under Rule 23, the action must meet the prerequisites of Rule 23(a) and one set of the alternate requirements of Rule 23(b).

### 1. *Commonality.*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class . . . ." The district court correctly held that each California case contains common issues "of design, testing, manufacturing, labeling and inspection of the Dalkon Shields." But on the issues of negligence, strict products liability, adequacy of warnings at relevant time periods, breach of warranty, fraud and conspiracy, commonality begins to be obscured by individual case histories.

Different questions of law and fact could apply to various plaintiffs in the California class because of different representations and warnings made to each woman, different injuries suffered, and different defenses available to Robins. The commonality requirement of Rule 23(a)(2) is not, of itself, insurmountable, but problems of commonality merge into problems of management.

### 2. *Typicality*

Rule 23(a)(3) requires that "claims or defenses of the representative parties . . . [be] typical of the claims or defenses of the class . . . ."

■ Generally, in a class action, plaintiffs who bring the action are the representative parties. They bear the burden of showing that their claims are typical, as well as the burden of demonstrating that the other Rule 23(a) elements are satisfied. *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1308–09 (9th Cir. 1977).

Appellants assert that the trial court has not designated representative parties. Named plaintiffs generally are designated parties before the class is certified and "typicality" is determined on the basis of their claims. The trial court stated in its order conditionally certifying class actions that "representative parties have been selected covering the broadest possible gamut of types of injuries. . . ." *In re Northern District of California "Dalkon Shield" IUD Products Liability Litigation,* 526 F.Supp. at 919–20. This designation may require a substantial subdivision of representative subclasses and appears to offer little advantage over a few test trials that may produce more settlements than would a lengthy and complicated trial of consolidated cases.

The *Agent Orange* court found the typicality requirement was met: "[a]lthough the named plaintiffs for purposes of the class action are yet to be designated, the court is satisfied that out of the extremely large pool available representative plaintiffs can be named who will present claims typical of those of the class." *In re Agent Orange, supra,* 506 F.Supp. at 787.

■ From the large California class the court may be able to find plaintiffs whose claims are fairly representative of the varying injuries. In proving liability under a negligence theory, however, the plaintiffs have to prove not only their inju-

ries, but that Robins and each defendant owed them a duty of care and also what those different standards of care were, if they were breached, and—most important—if the breaches proximately caused the plaintiffs' varying injuries. *See generally*, W. Prosser, *Law of Torts*, §§ 41–42 (4th ed. 1971); *Restatement (Second) of Torts*, ch. 16, §§ 430–461 (1965). To prove liability under a breach of warranty theory, representative plaintiffs must exist for each type of warranty, assurance, or medical advice each plaintiff received. The difficulty of meeting the typicality requirement seems obvious.

While we recognize the many differences between this case and *LaMar*, supra, 489 F.2d 461, the case is instructive. The district court believed that an exception could be found within the *LaMar* doctrine for this particular case because "plaintiffs have alleged a concerted scheme or conspiracy between defendants in the marketing, design, testing, and production of Dalkon Shields." But this generalization, while partly true, loses sight of the fact that some of the plaintiffs have not alleged that all of their defendants had so conspired. For example, some plaintiffs sued their own doctors and the local suppliers of those doctors, without planning to prove that those defendants were part of a conspiracy.

The district court's holding was inconsistent with *LaMar*. The financial importance of common questions of law and fact cannot be used to create a class of plaintiffs who have claims against some common defendants and some separate and uncommon defendants. The complexity of issues peculiar to individual claims militates against grouping all plaintiffs into a class for only part of their recovery.

We do not decide or suggest that the typicality requirement of Rule 23(a)(3) may never be met when multiple plaintiffs sue different defendants. But the requirement is not met in this case.

### 3. Adequacy of representation.

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Adequacy of representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive. 7 Wright and Miller, *Federal Practice and Procedure* §§ 1765–1769 at 615–57. *See In re Agent Orange, supra*, 506 F.Supp. at 788; *Payton v. Abbott Labs, supra*, 83 F.R.D. at 388.

The trial court found that "whichever firm is chosen to represent named plaintiffs will vigorously and competently litigate the action." We assume that the plaintiffs' California counsel named in the briefs were known to the district court to be competent attorneys. And the court correctly found "no reason to suspect any antagonism between any of the absentees and the named plaintiffs."

Appellants argue, however, that adequacy is not satisfied because representative plaintiffs who do not have a cause of action against a particular defendant (such as individual doctors) cannot fairly and adequately protect the interests of those who do have such causes of action.

The counsel originally designated by the court to be lead counsel for the nationwide class and statewide class attempted to resign from both positions. The judge did not accept his resignation from the statewide class. Attorneys for the California plaintiffs who appealed assert that they will suggest that their clients opt out of the California liability class, leaving only the nationwide punitive damage class. If they do so, the issue of a California liability class may become moot.

### C. Rule 23(b)(3) Requirements

Under Rule 23(b)(3) questions of law and fact common to members of the class must predominate over questions affecting individual members, and the class action must be superior in terms of fairness and efficiency to other means of litigation. Fed.R. Civ.P. 23(b)(3); *LaMar v. H & B Novelty and Loan Co., supra*, 489 F.2d at 467.

### 1. *Predominance.*

The trial judge found that a "common nucleus of operative facts" exists in this case that can be resolved in one adjudication. This common factual nucleus is "whether and when defendants knew or should have known of the dangers of the Dalkon Shield to its users .... [and] the facts surrounding defendants' design, production, etc. of the Dalkon Shield ...."

Although those are common factual questions, the court should have balanced these concerns with the greater number of questions affecting individual class members. The 23(b)(3) class is limited to the issue of liability, but Robins' overall liability, under. some of the theories, cannot be proved unless each plaintiff also proves that Robins' breach of its duty proximately caused her particular injury.

For those plaintiffs who assert a breach of warranty claim, additional individual factual issues will have to be argued and determined. Robins' warranties consisted mainly of various medical journal and medical trade-show advertisements over a four-year period. Different types of advertisements were printed on different dates in different journals. Different doctors read various periodicals. The advertisements were made to and read not by plaintiffs but by their doctors.

While facts about what warranties or representations Robins made and whether Robins breached them could be determined on a class basis, these facts can also be reached in consolidated discovery proceedings, and can be expected to become standardized after a few trials.

### 2. *Superiority*

Efficiency is a factor supporting class action treatment for some of the issues raised by California plaintiffs. The strongest supporting factor, however, is that by litigating portions of liability (defective or negligent design, existence of warranties) on a class basis, litigation costs of presenting evidence and expert witnesses will be greatly reduced.

A trial court can sever and try only certain issues on a class basis under Rule 23(c)(4)(A). The few issues that might be tried on a class basis in this case, balanced against issues that must be tried individually, indicate that the time saved by a class action may be relatively insignificant. A few verdicts followed by settlements might be equally efficacious.

### 3. *Considerations of Rule 23(b)(3)(A–D).*

In determining if common issues predominate and a class action is superior, the court should consider the factors provided in 23(b)(3)(A–D).

A. The California liability class members have a strong interest in controlling the prosecution of separate actions. Counsel for plaintiffs who have appealed have stated they will recommend that their clients opt out of the class. If a large number do so, the class will be unable to proceed.

B. Several Dalkon Shield cases already have been completed in California, and over 300 are pending.

C. The majority of California Dalkon Shield cases were not filed in the Northern District of California, although most plaintiffs' counsel are from the Northern or Central Districts.

D. Management is made difficult by the complexity and multiplicity of issues and by plaintiffs' hostility to the class action.

In addition, in this case, many plaintiffs have sued other defendants, such as their individual doctors, and the presence of these separate defendants creates additional problems of management.

### CONCLUSION

The California liability class does not satisfy the typicality requirement of Rule 23(a)(3) or the Rule 23(b)(3) requirement that the class action be superior to other available means of adjudication. We do not preclude further consideration by the district court of motions to certify a more limited class or subclasses under Rule 23(b)(3).

The court erred in certifying the Rule 23(b)(1)(B) nationwide punitive damage class on its own motion without giving out-of-state plaintiffs an opportunity to participate in prior briefings or hearings, and without establishing as a fact that Robins' assets were too limited to permit conventional litigation. Even if further proceedings were had on those issues, however, the case would still fail to meet Rule 23(a)'s preliminary requirements of commonality, typicality and adequacy of representation. Moreover, separate early punitive damages awards need not inescapably affect later awards. Therefore a Rule 23(b)(1)(B) class action is inconsistent with this court's decisions in *LaMar* and *McDonnell Douglas*. We conclude that both classes must be decertified.

The orders challenged in this appeal are vacated and the cause is remanded for further proceedings.

Vacated and remanded.